UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SEVEN TRADE LLC,                                    Civil Action No.

                    *Plaintiff*,          **COMPLAINT**

       -against-                              **JURY TRIAL DEMANDED**

MEDICAL ENGINEERING LLC, LONNIE BANKS,
VIKING SALES GROUP LLC, AND SHLOMO E.
SUISSA.

                   *Defendants*.
------------------------------------------------------------------------X

      Plaintiff Seven Trade LLC ("Plaintiff"), by its attorneys, Oved & Oved LLP, complaining

of Defendants Medical Engineering LLC ("Medical Engineering"), Lonnie Banks ("Banks"),

Viking Sales Group LLC ("Viking"), and Shlomo E. Suissa ("Suissa"), alleges as follows:

## NATURE OF ACTION

      1.     As the fourth wave of the COVID-19 pandemic swept through the country and tens

of millions of people desperately sought COVID-19 self-test kits, Plaintiff agreed to procure and

provide certain COVID-19 at-home testing kits for a large healthcare company.

      2.     In January 2022, Plaintiff was introduced to Suissa and Banks, who represented

that they, and their respective companies, Viking and Medical Engineering, had significant

experience in selling COVID-19 self-test kits and related COVID-19 protective products.  Suissa

and Banks repeatedly assured Plaintiff that Medical Engineering was in possession of millions of

COVID-19 at-home test kits that would meet Plaintiff's requirements and would be delivered to

Plaintiff within two weeks.  Based on these representations, on January 20, 2022, Plaintiff paid to

Defendants $1.8 million and, pursuant to Defendants' representations, expected Defendants to

perform by delivering the bargained-for goods on February 3, 2022, as promised.

3.      Plaintiff did not receive the goods by February 3, 2022.  When confronted, Defendants concocted lie after lie, including providing Plaintiff with two fraudulent wire confirmation documents and a false video purporting to depict pallets of at COVID-19 self-test kits at Defendants' warehouse allocated for delivery to Plaintiff.  Eventually, Defendants were forced to admit that Medical Engineering did not own any COVID-19 home test kits and that their representations, made to induce Plaintiff to wire to Defendants $1.8 million, were entirely false. Thus, Defendants wholly lacked the ability to perform as promised.  Rather, Defendants had jointly engaged in an orchestrated scheme to defraud Plaintiff out of $1.8 million with the sole intention of misappropriating Plaintiff's funds.

4.      Accordingly, Plaintiff brings this action to recover the funds it paid to Defendants, lost profits, and out-of-pocket expenses resulting from Defendants' fraud, breaches of contract, and other misconduct.

## PARTIES

5.      Plaintiff is a New York limited liability company with a principal place of business in New York.  Plaintiff's sole member is a natural person who is a citizen of Rockland County, New York.

6.      Defendant Medical Engineering LLC, upon information and belief, is a Delaware limited liability company with a principal place of business in California.  Upon information and belief, Medical Engineering's sole member is Lonnie Banks, who is a citizen of California.

7.      Defendant Lonnie Banks, upon information and belief, is a natural person who is a citizen of California.

8.      Defendant Viking Sales Group LLC, upon information and belief, is a Florida limited liability company with a principal place of business in Florida.  Upon information and belief, Viking's sole member is Shlomo E. Suissa, who is a citizen of Florida.

9.     Defendant Shlomo E. Suissa, upon information and belief, is a natural person who is a citizen of Florida.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are domiciled in different states, and the amount in controversy exceeds $75,000.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

A.     **Defendants' Scheme to Fraudulently Induce Plaintiff**

12.     As the fourth wave of the COVID-19 pandemic raged in January 2022, Plaintiff agreed to provide COVID-19 self-test kits to a large healthcare company.

13.     On January 18, 2022, Plaintiff was introduced to Suissa, a purported COVID-19 self-test kit broker.  During a telephone call that day between Plaintiff and Suissa, Suissa represented to Plaintiff that he was the head of Viking and, through Viking, had extensive experience in procuring large quantities of personal protective equipment and at-home COVID-19 test kits.

14.     During the January 18, 2022 telephone call, Plaintiff advised Suissa that it needed certain COVID-19 self-test kits to provide to its customer and that time was of the essence to fulfill Plaintiff's obligations to its customer.  Suissa advised that he understood and represented to Plaintiff that one of his industry contacts, Medical Engineering, had secured a large supply of COVID-19 self-test kits directly from Siemens, the manufacturer.

15.     Later that day, Suissa set up a telephone call among Plaintiff, himself, and Banks, who held himself out as the principal of Medical Engineering.  During that call, to induce Plaintiff to purchase the Covid-19 self-test kits from Defendants, Banks and Suissa each separately

represented and confirmed that Medical Engineering owned millions of Clinitest Rapid COVID-19 Self-Test kits manufactured by Siemens (the "Test Kits") and that the Test Kits were available for sale and delivery to Plaintiff within two weeks. Suissa advised, and Banks confirmed, that Medical Engineering would sell the Test Kits to Plaintiff at a per-unit price of $5.90 and that Viking would broker the transaction with Medical Engineering paying Viking a commission after the completion of the transaction.

16. Plaintiff was aware that the market for COVID-19 self-test kits was exceptionally tight, and Plaintiff was only willing to deal with a supplier that could provide the Test Kits in the short timeframe it required. Thus, Defendants' representations of Medical Engineering's outright ownership and possession of the Test Kits, coupled with the representation that Plaintiff would receive delivery of Test Kits within two weeks of its making payment to Defendants, were material in inducing Plaintiff to enter into the transaction with Defendants. But for these express representations of Defendants, Plaintiff would not have entered into this transaction with Defendants.

17. Unknown to Plaintiff at the time, Defendants' representations were false, and Defendants, including Suissa and Banks, knew that they were false when made.

18. Indeed, despite Defendants' representations, Medical Engineering did not own any Test Kits and, thus, could not possibly supply them to Plaintiff. Rather, Defendants, at all times, intended to enrich themselves at Plaintiff's expense by fraudulently inducing Plaintiff to pay them, and, upon information and belief, then divide Plaintiff's funds among Defendants while never providing the Test Kits to Plaintiff.

19. Relying on Defendants' representations and unaware of their falsity, Plaintiff agreed to purchase the Test Kits from Medical Engineering through Viking with the Test Kits to

be delivered to Plaintiff in New York within two weeks from the date of Plaintiff's payment to Defendants.  On January 18, 2022, Plaintiff issued a purchase order to Medical Engineering LLC for 350,000 Test Kits at a per-unit price of $5.90 for a total purchase price of $2,065,000.  Given the difficulty that many other industry participants had suffered in obtaining timely delivery of COVID-19 self-test kits, Plaintiff and Defendants agreed that Plaintiff would pay $1.8 million upfront, with the $265,000 balance to be paid upon Plaintiff's receipt of the Test Kits (the foregoing is hereinafter referred to as the "Agreement").

20.     On January 20, 2022, Plaintiff wired $1.8 million from its New York bank account to Medical Engineering and, pursuant to the Agreement, Defendants were required to deliver the Test Kits to Plaintiff on or before by February 3, 2022.

**B.      Defendants Continue to Defraud Plaintiff to Cover Their Misconduct**

21.     With $1.8 million of Plaintiff's funds now securely in their possession, Defendants continued their scheme to defraud Plaintiff by covering up their misconduct while they, upon information and belief, divided up Plaintiff's funds among themselves and entities they control in an unlawful attempt at obstructing, hindering, and preventing Plaintiff's from recovering its funds.

22.     In accordance with Defendants' representations and the Agreement, Plaintiff awaited receipt of the Test Kits by February 3, 2022.  As the day progressed and the Test Kits had not arrived, Plaintiff called Suissa and Banks to inquire as to the status of their delivery.

23.     During a February 3, 2022 telephone call between Plaintiff, Suissa, and Banks, Banks falsely claimed that the Test Kits were "stuck" at one of Defendants' warehouses in Frankfurt, Germany, and could not be released due to "FDA regulations."  While understandably bewildered as to how regulations implemented by the United States Food and Drug Administration could prevent a warehouse in Germany from releasing the Test Kits, Plaintiff, in an attempt to

avoid further delay in receiving the Test Kits, offered to directly take possession of the Test Kits from Defendants' German warehouse at its own cost and expense.

24.     Confronted with this offer from Plaintiff, Banks continued weaving his false tale by advising Plaintiff that "FDA regulations" prohibited Defendants from releasing the Test Kits to Plaintiff.  When pressed by Plaintiff,  Banks failed to identify what supposed FDA regulations he was referring to and how any such purported regulations could prevent Plaintiff from taking possession of the Test Kits in Germany.  Defendants obfuscated and, ultimately, failed to provide anything resembling a coherent explanation as to its inability to provide the Test Kits to Plaintiff in accordance with the Agreement.

25.     Plaintiff now suspected that Defendants had defrauded it and demanded that Defendants immediately refund the entire $1.8 million that Plaintiff paid.  Banks and Suissa troublingly represented to Plaintiff that not all of Plaintiff's funds were immediately available for refund, but that Suissa would wire a partial refund of $600,000 to Plaintiff with the balance to come shortly.

26.     Beyond not being able to provide the Test Kits, the fact that Defendants claimed to be unable to immediately refund all of Plaintiff's $1.8 million was further cause for alarm.  The fact that Suissa appeared to be in possession of Plaintiff's funds was additional cause for alarm because Plaintiff wired the money to Medical Engineering.  Viking and Suissa were not supposed to receive any commission compensation until after Plaintiff received the Test Kits, which did not occur.

27.     On the verge of losing its customer, the $1.8 million it wired to Defendants, and its associated profits, Plaintiff threatened legal action and demanded that Defendants immediately

initiate a $600,000 wire transfer and provide Plaintiff with confirmation of such wire transfer to Plaintiff as proof.

28.    To buy time and forestall Plaintiff's threats of immediate legal action and, upon information and belief, to create additional time to allow Defendants to complete concealing, distributing, and secreting all of Plaintiff's $1.8 million and hinder any possibility of Plaintiff's recovery of its funds, later that same day, on February 3, 2022, Suissa provided Plaintiff with a purported outgoing wire request stamped "customer copy" from Wells Fargo in the amount of $600,000 from Viking to Plaintiff (the "First Fraudulent Wire Confirmation") that appeared to include a specific federal reference number (the "Fed Reference Number").

29.    A federal reference number is a unique identifier used to transfer balances **for immediately available credit** among the member banks of the United States Federal Reserve System.  Thus, the existence of a legitimate federal reference number would indicate that the funds to which the Federal Reference Number was assigned had, in fact, been transferred.

30.    By February 4, 2022, Plaintiff had not received the funds purportedly evinced by Defendants' First Fraudulent Wire Confirmation and Plaintiff called Suissa and Banks to inquire about the first $600,000 tranche of the refund.  Suissa feigned shock and surprise that the $600,000 had not arrived and represented to Plaintiff that he would inquire with the bank.  Later that same day, Suissa and Banks called Plaintiff and represented that the wire was pending and Plaintiff should receive the $600,000 imminently.  Yet again, in what had become a pattern of deception, deceit, and duplicity, despite Defendants' repeated representations to Plaintiff, the $600,000 did not arrive.

31.     The following week, between February 7-9, 2022, Plaintiff placed numerous phone calls to Defendants regarding the status of its refunds and the Test Kits, all of which went unanswered.

32.     Then on February 10, 2022, Suissa provided Plaintiff with a screenshot of a purported wire transfer of $900,000 from a Chase bank account (the "Second Fraudulent Wire Confirmation") back to Plaintiff's designated account and, by telephone, promised Plaintiff that Plaintiff would receive the $900,000 evidenced by Defendants' Second Fraudulent Wire Confirmation as a partial refund.

33.     Despite providing purported proof of a $900,000 wire transfer to Plaintiff, later that same day, on February 10, 2022, Suissa incongruously sent Plaintiff a video supposedly filmed at a Los Angeles, California warehouse (the "Video").  In the Video, an unidentified person taking the video orally states that it was "February 9, 2022" and proceeded to describe the Video's depiction of 26 pallets of "iHealth" COVID-19 test kits, which the speaker identified as earmarked "for" Plaintiff's principal.

34.     Notably, Plaintiff did not order iHealth brand COVID-19 self-test kits, but rather Siemens Clinitest Rapid COVID-19 Self-Test kits.

35.     Despite receiving two purported wire confirmations from Defendants, Plaintiff has not received any portion of its refund.  Plaintiff questioned Suissa and Banks regarding the iHealth tests that Defendants supposedly procured to fulfill its order despite Defendants' prior representation that Medical Engineering owned the Test Kits and that they were available for immediate delivery to Plaintiff.  Suissa admitted that Medical Engineering did not, actually possess or own the Test Kits at the time the parties entered into the Agreement, but rather, Defendants had

tried to order them from Siemens to fulfill Plaintiff's order.  In other words, Defendants expressly admitted to Plaintiff that they defrauded Plaintiff.

36.     Nonetheless, still eager to provide its customer with some form of COVID-19 self-test kits and avoid defaulting on its commitments, on February 11, 2022, Plaintiff advised Defendants that it would accept the iHealth brand kits and would arrange for them to be picked up at the Los Angeles warehouse where the Video was purportedly filmed.

37.     Undeterred by Defendants' consistent failure to deliver on any of their multiple promises to Plaintiff, Suissa and Banks attempted to prolong the charade by encouraging Plaintiff to do so.

38.     A few hours later on February 11, 2022, Plaintiff's trucking company arrived at the Los Angeles warehouse to pick up the iHealth test kits.  Upon arrival, however, the warehouse advised that there were no COVID-19 tests available for, or allocated to, Plaintiff or its principal. Moreover, the $900,000 supposedly sent through Defendants' Second Fraudulent Wire Confirmation had still not arrived.

39.     Plaintiff immediately confronted Defendants about its inability to pick up the goods from Defendant's California warehouse.  Defendants, yet again, made excuses.  Apparently realizing that their scheme had been exposed and now seeking to ward off litigation, Suissa caused Viking to transfer a small partial refund of $200,000 to Plaintiff, while promising the $1.6 million balance would be refunded shortly.

40.     In the weeks following, Plaintiff continued to follow up with Defendants regarding the promised $1.6 million refund.  Despite offering more excuses and making more false promises, Defendants have failed to pay any further refunds and have not delivered any COVID-19 self-test kits to Plaintiff.

41.     Stated simply, each and every aspect of Plaintiff's interactions with Defendants was marred by Defendants' fraud.  Defendants, admittedly, lied about Medical Engineering's ownership of the Test Kits.  Thereafter, Defendants used the fabricated First Fraudulent Wire Confirmation, the Second Fraudulent Wire Confirmation, and the Video to aid and advance their fraudulent scheme to steal Plaintiff's funds and delay Plaintiff's discovery of their brazen theft as well as forestall litigation to recover same, all while, upon information and belief, Defendants finalized their secretion of the balance of Plaintiff's funds to frustrate Plaintiff's ability to recover them.

42.     As a result of Defendants' fraudulent scheme, breaches, and other misconduct, Plaintiff has been unable to meet its commitments to provide Test Kits to its customer, of which Defendants were fully aware, and, in addition to the $1.6 million stolen by Defendants, has lost profits in the amount of at least $1,435,000.00 and incurred out-of-pocket expenses of $25,000 in connection with hiring a trucking company to go to the Los Angeles warehouse.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Fraud Against Defendants)

43.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

44.     As set forth above, Defendants fraudulently induced Plaintiff to enter into the Agreement by making materially false and misleading representations of then-existing fact, and omitting material information peculiarly within Defendants' knowledge.  Defendants then advanced the fraud by sending falsified and doctored First Fraudulent Wire Confirmation, Second Fraudulent Wire Confirmation, and the Video to Plaintiff.

45.     Defendants had actual knowledge of the materially false and misleading representations and omissions in their communications with Plaintiff, including that they did not

own the Tests.  In the alternative, Defendants had a reckless disregard of the materially false and misleading representations and omissions contained therein.

46.     Defendants were aware that, given their proclaimed expertise and experience in procuring and delivering COVID-19 self-test kits, that Plaintiff would rely upon Defendants' representations in deciding to wire funds to Defendants and enter into the above-described transaction.

47.     Plaintiff was unaware of, and could not have discovered through the exercise of reasonable diligence, Defendants' materially false and misleading representations and omissions.

48.     As set forth above, Banks is the principal and an officer of Medical Engineering, and Suissa is the principal and officer of Viking.

49.     As a direct and proximate result of Defendants' fraud, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,060,000, plus costs, interest, expenses, attorneys' fees, and punitive damages in amounts to be determined at trial.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Aiding and Abetting Fraud Against Banks, Suissa, and Viking)

50.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

51.     Alternatively, in the event the Court does not find that Banks, Suissa, and Viking directly defrauded Plaintiff, as set forth above, Banks, Suissa, and Viking aided and abetted the fraud committed by Global Health.

52.     As set forth above, Banks, Suissa, and Viking had actual knowledge of the fraudulent scheme and provided substantial assistance by knowingly providing false and fraudulent information and communications to Plaintiff with the knowledge that Plaintiff would rely on such fraudulent information.

53.     As a direct and proximate result of Banks, Suissa, and Viking's misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,060,000, plus costs, interest, expenses, attorneys' fees, and punitive damages in amounts to be determined at trial.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Breach of Contract Against Medical Engineering)

54.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

55.     As set forth above, Plaintiff and Medical Engineering entered into the Agreement, which is a valid and binding contract.

56.     As set forth above, Plaintiff fully performed under the Agreement.

57.     As set forth above, Medical Engineering breached the Agreement.

58.     As a direct and proximate result of Medical Engineering's breach of the Agreement, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,060,000, plus costs, interest, expenses, and attorneys' fees in amounts to be determined at trial.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Money Had and Received Against Defendants)

59.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

60.     As set forth above, Defendants received $1.6 million belonging to Plaintiff and Defendants have benefitted from receipt of Plaintiff's money.

61.     Alternatively, in the event the Court does not find that a contract existed between Plaintiff and any of Defendants, the Court should find that principles of equity and good conscience do not permit Defendants to retain the $1.6 million paid by Plaintiff.

62.     As a direct and proximate result of Defendants' misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1.6 million, plus costs, interest, expenses, and attorneys' fees in amounts to be determined at trial.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
**(Unjust Enrichment Against Defendants)**

63.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

64.     As set forth above, Defendants have been unjustly enriched at Plaintiff's expense.

65.     Alternatively, in the event the Court does not find that a contract existed between Plaintiff and any of Defendants, the Court should find that principles of equity and good conscience do not permit Defendants to retain the $1.8 million paid by Plaintiff.

66.     As a direct and proximate result of Defendants misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1.6 million, plus costs, interest, expenses, and attorneys' fees in amounts to be determined at trial.

**JURY DEMAND**

Plaintiff demands a jury trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff hereby requests that the Court grant the following relief:

a.  Judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount to be determined at trial, but in no event less than $3,060,000, plus pre-judgment interest and punitive damages;

b.  Plaintiff's costs and disbursements incurred in this suit;

c.  Plaintiff's attorneys' fees to the full extent permitted by law; and

    d.  Any such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         February 28, 2022

                                  By:     <u>s/ Glen Lenihan</u>
                                            Terrence A. Oved, Esq.
                                            Darren Oved, Esq.
                                            Glen Lenihan, Esq.
                                            OVED & OVED LLP
                                            *Attorneys for Plaintiff*
                                            401 Greenwich Street
                                            New York, New York 10013
                                            Tel:  212.226.2376